Good morning. Norma Aguilar on behalf of Mr. Gonzalez-Marichal. I would like to reserve three minutes for rebuttal. Your Honors, the District Court erred when it allowed the government to present the testimony of a witness, a police officer, who talked about other acts about which the government hadn't given notice pre-trial. The government, one of the central issues in the case was Mr. Gonzalez-Marichal's intent, because his testimony, his defense was that he didn't know that the material witnesses in his car were undocumented and that he ran away from the police, away from the Border Patrol, because he has this fear of law enforcement. Is all rebuttal evidence necessarily 404B evidence? No. Why isn't this a classic case of simply rebutting the claim of nervousness whenever I get near a police officer? Well, the testimony that Mr. Gonzalez gave was that he was nervous, that he was afraid of police because of his experiences in Cuba. So they brought in another police officer to say that when I spend time with him he wasn't nervous at all. But it wasn't a classic case of impeachment because the government never asked Mr. Gonzalez-Marichal about that particular incident on cross-examination. The government, as it was ---- The government doesn't have to. Well, in this particular case, this was another act because it didn't relate to the charged offense. And Vega describes 404B as ---- But it's not to show any of the criteria that are listed in 404B. It's simply directly to contradict the claim that he gets nervous when police are around. Well, here, though, the claim that he gets nervous about police being around related to intent, his intent for running away. And intent is one of the permissible 404B reasons for allowing other acts into a case. And, moreover, Mr. Gonzalez-Marichal's testimony about being afraid of law enforcement was basically about how he reacts, how he's affected, that he has this phobia. So I do think that this is the kind of case that does go to character, does go to basically what he's like as a person, how he reacts in a particular situation. It was the government who, on cross-examination, and they were ---- they had a right to cross-examine, but they're the ones that really went into the details of Mr. Gonzalez-Marichal's fear. And, obviously, under Castillo, under 608, they can't open their own door. But they're the ones that really had, on cross-examination, got him to say more specific things. On direct examination, he said that he was afraid of police. That's on page 671 of the excerpt of record, and that he got nervous around police. That was what he said on direct examination. And in your opinion, counsel, that does not open the door to the government to conduct cross-examination? They absolutely could have conducted cross-examination. But what they did here is they tried to prove this by extrinsic evidence, which under 608 they weren't allowed to do, and then they characterized this as just simply rebuttal without having given us notice. The district court held that one wasn't entitled to notice until the evidence actually went into the case, even where the government was fully familiar with the theory of defense. And so our position was that the government couldn't have asked Mr. Gonzalez-Marichal questions about this particular incident with this particular police officer, but they were very careful not to. They structured their cross-examination to get him to answer questions about this and to get him closer to the point where then they could say, well, this is impeachment. Would you rather then have allowed them to say once you were detained in connection with misdemeanor convictions for battery and an arrest for alien smuggling? Well, the arrest for alien smuggling didn't come in. The government didn't intend to introduce it, and they conceded that it wasn't proper 404B. But the evidence that came in was not that he was arrested for misdemeanor battery. It was that a police officer had an interaction with him for an hour, and during that hour, his hands weren't shaking and that he didn't. So what's the other bad act that you're complaining about, the other bad act evidence? Well, 404B doesn't require that the act actually be that. What 404B says is, and what Vega says, is that it can be another act. And the way you define another act is not by looking at whether it's bad or not, but whether it is related to the charge of offense, whether it's intrinsic to the charge of offense. And here, since it wasn't intrinsic, it's another act. You know, you've fought half your time already. Do you want to talk about your other issue, about the instruction? Law of the case? Yes. The district court originally, at the first trial, had given an instruction, 4.9. It's a special circumstances instruction. It basically tells the jury that you should look at the testimony of a particular witness more carefully, because they either have gotten some benefit. In this case they didn't give it the second time, and you say they're bound by law of the case. Right. That under they're required to give it. That under this Court's precedence, under old person, that the district court has to engage in an analysis. And there was no controlling, intervening authority that would have told the district court. No, there wasn't any substantially different evidence, but there was a decision that the judge thought was clearly erroneous and that the enforcement of it would create a manifest injustice. And the court explained very carefully that on reconsideration of the evidence, the instruction didn't fit. But the district court also said, well, that's an argument that can be made, and he permitted the district court permitted defense counsel to argue it in the closing argument. And so, obviously, if the district court believed that there wasn't sufficient evidence to give that instruction, then it shouldn't have permitted the defense attorney to argue it on closing argument by allowing him to argue it. You know, you permit argument about lots of different things. That doesn't mean you give an instruction regarding them. But the question is whether it was clearly erroneous. Aren't you, what you're really attacking is the fact that the judge made a factual determination that the treatment of this particular witness was not, did not constitute special treatment justifying the giving of that instruction. And therefore, what I think you're attacking is that judge's factual, that factual determination. Well, but in determining whether the law of the case applies, it's a very deferential standard. You have to find that it was clearly erroneous, that it was clear error. Well, the question is, is it factual or is it legal? Was he deciding that this set of facts doesn't meet the legal standard for when the was his error if there was an error in his characterization of the facts? I think it was a combination of both. The judge allowed the defense attorney to argue it on closing argument under those circumstances. I don't believe that it could have been clearly erroneous because otherwise he would have precluded defense counsel from making an argument. Well, forget that. Let's talk about what was, what was the error and what was clearly erroneous or not clearly erroneous. Was there any doubt about what the facts were? About the facts related to the material witness? The witness had not entered into any contract or agreement, receiving no benefits. Well, he hadn't been prosecuted for illegal entry. He admitted that he had entered illegally at least two times. The facts were that he hadn't been prosecuted. He was here in the country. He had committed a crime. They hadn't prosecuted him. The question is, does that qualify for this kind of an instruction? Well, and my argument would be that it does because clearly our article. It was clearly erroneous when he determined the first time that it did qualify for that kind of an instruction. Well, the material witness clearly had an incentive to testify in the way that the government wanted him to testify. He testified that he hadn't been prosecuted, that his brother wasn't being prosecuted and that he hoped to, at some point, be able to enter the country legally. But there was no quid pro quo. There was no contract. There was no agreement. And that's what the court identified as being the problem with the instruction, that that instruction flows from an agreement. Here there is none. There was none. But what makes a witness less credible under those circumstances is his belief about his benefit, what he's getting out of it. What did he get out of it? What we need are the cases to start telling you that the judge concluded that you need an agreement for this kind of an instruction. And the question is, is that A, correct? Is it clearly erroneous when he decided the first time you didn't need an agreement? What do the cases tell us about whether you need an agreement or not? Well, Your Honor, I didn't. I don't have those cases. Okay. Your time is up anyway, so maybe we'll get the answer from your opponent. Thank you. Good morning, Your Honors. Bruce Castor on behalf of the United States. Your Honors, to begin with, I don't think a lot of the case doctrine even needs to be applied in this situation. I say that based on the Smith case, which says if the trial judge has maintained jurisdiction over litigation, the usual rule is the trial judge is free to change a ruling. Okay. Well, let's get back to that one a little later. Let's assume for the first question that a lot of the case does apply. And the question is, was the judge's ruling the first time clearly erroneous? Is there a law that tells us that his first ruling was clearly erroneous, that you need an agreement? Your Honor, I'm not aware of any case that says you cannot give this instruction without an agreement. All I'm aware of is the cases we cite in our briefs, which only give the instruction when there's, like, a plea agreement, a cooperating co-defendant, someone's being paid as a professional informant. I am not aware of any case under these circumstances where this special intent instruction has been given. I don't know how we would get a case that Your Honor is asking. Because the government's never allowed to appeal, so we're not going to get an opinion saying, you know, you shouldn't have given the instruction. No, but you'd get an opinion that says you're not entitled to the instruction because you don't have an agreement. Oh, I see. Well, I haven't found that case, Your Honor. Oh, is that the Hoyos case? I'm not sure, Your Honor. This was not an informant because his testimony was not tied to the sale of specific information? I have to be frank, Your Honor, I don't remember the Hoyos case. But I do want to go back to my original point that this is not the situation where the law that they sought. Well, we'll come to your original point. I'm not familiar with the Hoyos case. Every case that I've ever been involved in where this instruction was given involved either a professional informant, a cooperating co-defendant. There was, just to make the record 100 percent clear, there was no quid pro quo. There was no agreement. There was no benefit. This person got no special benefit for being a witness on behalf of the government. He did testify, and the trial counsel was allowed to cross-examine on this and was allowed to argue this quite appropriately. I would like to come back and live in the United States. Did you handle this case? I did not, Your Honor. Do we know whether the government sent a letter on behalf of this witness after the trial was over to some form of homeland security or immigration to be included in the person's file should he make an application to return? I believe I can answer that with a no, but I can't be 100 percent. I courted this case with the trial counsel. I asked him all these questions. He did not say anything like that took place. I don't believe anything he did. In fact, what he told me was we would be free to prosecute this individual if we wanted to for illegal entry on these charges. There was no deal. So it was still hanging over his head. No, no. When I was talking about it, I said, look, there was no deal, Bruce. There was no deal. There was no implicit deal, no real deal. I could have prosecuted him the next day if I wanted to for illegal entry. We wouldn't have, but we could have because there was no deal. The question may also be what the witness believes, whether he thinks that he is receiving a benefit. He was asked on cross, any promises? No. Has the government promised you can come back to the United States? No. Are you being sent back to Mexico after you testify? Yes. Who tried this case? Mr. Oda, Mr. Cook. Is Mr. Oda still around? They're both in private practice, Your Honor. You want to make the argument? I want to make the argument, and this is not the kind of ruling that the law of the case doctrine should even be considered. The law of the case doctrine is a purely discretionary, it's basically a rule of practice instituted by the courts to manage litigation. And the cases say that. Don't we have one case that says it's okay to change it up until the time a jury acts and that after that you can't? I'm not aware of that case. I know that in Alexander this Court said just the mere fact that there was a mistrial is not in and of itself a reason to change if law of the case is being applied. Let's see if I can really summarize my point quickly, Your Honor. When a trial court maintains jurisdiction, the general rule is you're free to change your rulings up to and including the point you lose jurisdiction. And the reason for that is if the judge feels they made a mistake, there's no sense in proceeding on it and exacerbate that mistake. There's no reason to go to the court of appeals to fix any mistake that the judge can fix on their own. Now, there are cases out there that say, for instance, in this court, a law of the case doctrine is if one panel of this court receives a case from the district court and decides an issue, the case goes back down, the case comes back up to another panel, that second panel is not going to revisit that issue unless the law of the case exceptions are met, which is, you know, manifest injustice, change of circumstance, clear air, that kind of thing. I thought the Alexander seems to me to say the opposite. See, Alexander, I think, is much more closer to the position I just enunciated. Alexander, the original trial judge, had full litigation, decided to suppress a confession based on a 9-11 tape, which indicated to that trial judge that the defendant was delusional and couldn't waive it. It was transferred to a new judge, much like a second panel gained it. A new judge. But they don't base it on the new judge. They just say the fact that there's a mistrial is not justification. By itself. But I think transferring it to the new judge was important. Well, but it's not given as a reason in the opinion. That's true. It's talked about the facts. It doesn't really give a reason. The only reason given in the opinion was there was no change of circumstance. Yeah. But I think implicit was about to say when I began, implicit in the rule of law of the cases, as enunciated, the reasons behind the rule are to enforce the policy that litigation must come to an end and to maintain consistency during the course of a lawsuit. Implicit in that is, at some point, a ruling becomes so important to how the parties are conducting the lawsuit, it's unfair to change horses in midstream. Neither of those factors are in this case. It was a sua slante decision at the end of the first trial. It had absolutely no impact on the litigation strategy of the defendant. The second trial was conducted almost like a blueprint. The proper credibility instruction was given that allowed the defendant to argue all that he wanted to argue about bias and prejudice and so forth. There's absolutely no reason to apply the law of the case here. And the change of circumstance was the judge looked at the case and said, I think I was wrong. This is not the kind of. Well, that's a clear error test, though. And it seems to me that that's the question here is you can't. That is an exception, is clear error. And I don't. Not enough just to say I looked at it and I think I was wrong. I disagree, Your Honor, with all due respect, that a trial judge is in the middle of a trial, can make those kind of decisions, and it doesn't have to be clear error. Well, it's not in the middle of a trial. It's after a mistrial. It's in the second trial. Correct. And, you know, we have two different points here. One is whether it's different because it's a mistrial. And I must say, I think I read Alexander exactly the opposite than the way you do, where they say that's the only change in circumstance. Correct. Was the mistrial. Correct. That's what I was saying. That's what they held. A mistrial by itself. But let's assume, put that point aside for the moment and just say what justifies an exception to law of the case. And it's not enough for the judge to say, well, I think I was wrong. I made a mistake. It's got to be clear error. Well, Your Honor, if it has to be clear error, Your Honor, I respectfully disagree in the situation we're in now, but I'll move on and say if that is the test. That's the other point. If that is the test, it was clear error. There is no case that supports the giving of this instruction in this factual situation. Is there a way to reconcile Smith and Alexander? The way I was trying to reconcile was there was a change from one judge to another. The litigation strategy had been formulated by the first judge. I mean, the whole defense had been formulated by the decision in the first judge. They had a trial based on that litigation strategy. The entire trial was a suppression of confession. There had been two motions to reconsider, both denied on law of the case grounds. The only thing that changed is there was a mistrial, a third motion to reconsider, and it was granted. And that, I think, implicates the second part of the reason behind the law of the case. At some point, a trial judge's ruling has become so intertwined in the conduct of litigation, it's just not fair to change horses. That's what I think happened in Alexander. In Smith, you know, the exact same thing happened, but it all happened pretrial before everything took place. There was a motion to suppress, granted, a motion to reconsider. The motion to suppress was denied. The trial continued. No problem. No law of the case issue. Moving on to Vega, Your Honor, I think the whole problem ‑‑ Vega won. Let's start over again. There was no character evidence introduced in this case. There was no evidence of character to prove conduct. There was no evidence of character to prove motive, opportunity, plan, anything like that. What there was was impeachment by contradiction. Castillo and Beverly from the Second Circuit clearly laid this out. It's totally appropriate. It's not 404. It's not 608. It's 607. The defendant took the stand and said, the reason I fled is because I'm always nervous around law enforcement. The government was totally entitled to put on a policeman to say, I had a contact of this individual in 2001. I was in uniform. He wasn't nervous. He didn't try to flee. It's impeachment by contradiction. It doesn't impact rule 404 or 608. The problem in why we're having this discussion is the Vega case, with all due respect to the officers of that opinion, is a little bit imprecise. If read correctly, there's no problem. What it said was, in order to be a 404 issue, the act in question doesn't have to be intrinsically a bad act. It doesn't have to be a crime. What it left out, and what was clear from context, is it does have to be an act that impugns a person's character. The whole evidence code section is about character. Ms. Aguilar and many other convinced attorneys in San Diego are leaving that aspect out, saying, look, what Vega means is, if you have any extrinsic act that you want to use in any way at this trial, you have to give notice. That's absolutely in violation of the prior precedence of this Court. I think Mr. Oded did a nice job assembling the cases on this from every circuit that reject that claim, that the act does not have to relate to character. Thank you. Your Honor, I think the issues are covered in the brief. I submit it. Absolutely no further questions. Thank you, counsel. Thank you very much. I think I have a few seconds left. We'll give you a minute. Thanks. But I would say that Mr. Castner really pointed out that the second case really was almost a blueprint of the first case. They were tried almost identically, and there were only two differences. One was the 4.9 that the judge didn't give the jury instruction, 4.9 of the second trial, and that the police officer testified in the second trial. And so I do think that under those circumstances there was harm here, that both of those errors, if not singularly then cumulatively, did harm Mr. Gonzalez's case. How do you distinguish the Smith case that says the law of the case doctrine is wholly inapposite and then puts in italics all rulings of a trial court are subject to revision at any time before the entry of judgment? Well, the problem with that is that it is inconsistent with Alexander. Well, no, it's not inconsistent with Alexander. It discusses Alexander. Yes, it does. And it says Alexander is different because it's a mistrial. This was the – Smith was the same trial, wasn't it? It was the same trial. I guess my argument would be that Smith, that you can – that – That if this were the same trial, he could change his mind during the trial. Right, but the – But it says – but Alexander is different, it says, because it was a mistrial. In our circumstance, I think it would be a lot more like Alexander, because here there was a mistrial and that was the only difference in the cases. It's not a lot more like. Yours is Alexander. It's a mistrial, as was Alexander. That's right. Okay. Thank you. Thank you, Your Honor. Thank you. Thank you both very much. The case is arguably submitted. Next case for oral argument is Alpha 3, Inc. versus City of San Diego. Thank you.
judges: Reinhardt, Trott, Robart